Good morning. May it please the Court, Michael Tanaka, Deputy Federal Public Defender appearing on behalf of Patrick Glass. A very long time ago, the Supreme Court decided Miranda to guard against involuntary confessions brought about by the inherent coercion of a custodial interrogation. Then the police, some police, started to circumvent that by using the question first warn second tactic of obtaining a confession and then giving warnings and getting the same statement repeated. Siebert condemned that, said that that was a rank violation of Miranda as well. That's what this case is about. It implicates that core concern. All the evidence here, save for the investigator's fair statement, shows that he intentionally engaged in custodial interrogation designed to produce a statement, deliberately failed to warn him, and then once obtaining that statement, went back and just had it repeated. So the second trial judge, when he made his ruling, the second trial judge when he made his ruling said, well, under all the circumstances. What did he mean by that? What did he mean by that? He said, if you look at his statement, he said, under the totality of the circumstances, it's clear that the officer screwed up. Made a mistake, or whatever it was. But it's clear what the reference was, that he made a mistake by not warning him, by failing to give him Miranda once he took him into custody. But we knew that. Counsel, excuse me. I think this is a really important point in the transcript. And as I read it, the trial judge said that under the totality of circumstances was sort of his preface. But he said that after listening to all the examination by the lawyers, right? And the lawyers covered many of the things you're discussing in your briefing. They covered the length of experience by this police officer and so forth. So what was left out? What is it that the trial judge didn't hear and didn't consider? He heard it. He clearly didn't consider it. And if he did consider it, he gave not one indication that he considered it. All he says is, I believe him. Counsel, why isn't it an indication that he considered it? Because he said under the totality of circumstances. Isn't that the indication that he considered it? No, I think that's clear that he was referencing only that the man did not give Miranda warnings when it was required. It wasn't. He clearly, he said not one word about any of the circumstance. In fact, earlier in the hearing, by excluding his own, by sustaining his own relevance objection with respect to whether he knew that he was that the reason he so consciously established the man wasn't in custody, it was that he wouldn't give him Miranda warnings, which seems like crucially relevant. Evidence is his belief that all he had to do was find, look in the guy's eyes, say, are you telling me the truth? This trial judge knew about the history of the litigation. There'd been a prior trial where this had been a major issue. He knew what he had to do. The second trial judge knew what was in play. Perhaps. Well, he did. I mean, you know, the cases are, a retrial like this is just not tried in a vacuum. There's a history to it. And I realized this was a different judge at the second time, but he was well aware that there'd been a prior trial that had resulted in a mistrial. And that one of the big issues was whether or not the second interview was going to be admitted. There's no indication and he knew why the first judge had found that it was an, he knew all of that. There's no indication in the record that the second judge had any familiarity. And as Taylor versus Maddox says, even though he hears it and the trial judge in that case heard everything and made not one reference to it. So this is all. So what, could you be more, my understanding is that he did truncate the hearing in some respects. You began alluding to that in terms of what he didn't allow in. What did he not allow in? What, in what respect did he limit the actual evidence on the suppression of hearing? Because you would say, I gather because of his view of what was relevant here. In actuality, the question, the answer came in, but I guess you could say it was stricken because he, he sustained his own relevance objection. But that particular. What was the question? Pardon? What was the question? The question was when you told, when you told him he was free to go, was that for the purpose, were you consciously thinking that, that was so you didn't have to give him Miranda rights? Oh, I see. It's like... Counsel, what, what site, what page in the record should I be looking at? I want to make sure I haven't missed anything. I've got the transcript right here. Of the transcript of the hearing? Yes, the second hearing, second trial. Pre, pre, pre-trial ruling. And what, what reference were you looking for, Your Honor? The, the page where you want to talk about the sustained relevance objection. Is it, is it ER 319? No, 305. All right. So I think Judge Berzon's question is, it's, it's the question I have as well. So if you could drill down on that, if you want me to start at 305, I can start at 305, but it, I'm trying to figure out what it is you think the judge squelched. What questions weren't asked? What is it he didn't know? The questions were asked. He probably knew all that. The really issue, real issue is whether he considered it. And my, my point at 305, at the bottom of the line, bottom of the page there, line 26, is he says it's irrelevant. What's irrelevant is the question at line 20. Are you aware that by saying he's free to leave, you would not have to give it? He found that irrelevant. I say that's stark evidence that he didn't believe, that he didn't consider this. He heard it. He didn't stop the defense lawyer from asking a lot of questions, but that doesn't mean he thought it relevant or that he considered it. It's in context, it's very clear that the only thing he considered was, do I believe investigator Cordova? When I look him and I ask him, sir, did you do this on purpose? And he says, no, I did not. In any credibility determination, you can't just take that answer in a vacuum. All the other evidence here, all of it, and it's overwhelming, I submit, Your Honor, shows that he did do it deliberately. My understanding of your legal argument is you're not asking us to rule that his view of the record was so unreasonable that we could grant habeas just for that reason. You're making a Taylor v. Maddox argument about the process, essentially, but you're not asking us to say that no reasonable person could believe this guy despite all these other circumstances. Yeah, there's a defect in the fact-finding process. Right. All I'm trying to clarify is that you're not asking us to hold that this was a substantively unreasonable fact-finding under 2254-G2, which I did say it was a mistake. There was a whole, I agree with you, there's a whole lot of other evidence that somebody else could believe, and in fact, the trial judge did believe, demonstrated that this was deliberate, but you're not asking us to grant habeas on the ground that it was unreasonable to think it wasn't deliberate on the record. On this record, then there's plenty of evidence that if this court reviews once getting past the ADPA-G2 bar, then this court is free to look at all the other evidence in the record that the state court ever considered. So you're asking us to say either under G1 that he had some obligation to look at the objective evidence in some respect that he didn't, or under G2 that he was unreasonable for... Exactly. Even though he said... The same way this court might... But it does require getting by the totality of the circumstances statement. That's the problem. Yeah. So let me, let's assume your time is running out, and I just want to hear you, so you'd have to get, even if we agreed with you, you'd have to get to a Brecht analysis. That's correct, Your Honor. Right. That's correct. And here the state court of appeal said that there was substantial evidence or whatever that they had some statement in there, in their opinion, right? They said that the reason it was harmless was because there were two victims, and that the jury acquitted with respect to the counts involving one, and found him guilty with respect to the counts of only two, which they said evidenced the jury's disregard of the statement essentially. But that, Your Honor, that's just totally contradicted by the record for at least four reasons. One, we have the empirical evidence. It's like running a science experiment. They have the first trial, all the same evidence comes in except for the statement, and then they don't convict. Second trial, the only difference is the statement, they convict. Secondly, the court, I mean, there was no corroboration, and the prosecutor emphasized repeatedly that this corroborates the two victims' testimony, or two girls' testimony. Well, the court of appeal hints that, or I don't know, maybe it was in the government's brief, the state's brief, but that the testimony of the second daughter, the younger daughter, was very powerful. It clearly was very powerful, Your Honor, but it was totally uncorroborated. Well, why couldn't the jury just believe her testimony outright? No, they could have, but we don't know that they would have, and the first one didn't. All that changed was the admission of a statement. Counsel, you've said a couple times that the only thing that was different was the defendant's recorded interviews, but I read the closing argument for the second trial, and it seems that in that argument, the public defender was, and the prosecutor were, of course, that much more time had gone by, and the public defender was trying to point out inconsistencies between how the girls had described what had happened over the course of the years. Is that right? That's correct. And didn't they have more to go on in the second trial than the first? More time had passed, and there was this other part of it that's hard to glean, which is the extent to which the girls were enmeshed in their parents' dissolving marriage. Was that a major theme at the second trial? I can't say it was a major theme, it was an explanation, but the salient point, Your Honor, is that there was just no corroboration. Can I follow up on that, then? Forgive me for interrupting, but the other part that jumped out to me was that there wasn't the medical examination, physical examination of the girls didn't corroborate the sexual assault. Is that right? Was that true of both girls? Yes. And the jury heard that both times? Yes. Okay. Mr. Tonko, why don't we hear from the State, and then I'll give you a minute for rebuttal. May it please the Court, Alistair Agkowili for the State. Keep your voice up, okay? Yes, sorry, Your Honor. I'd like to start with the question of what totality of circumstances means, what the trial court, Superior Court, meant when it said it considered... I have no idea what it means. Well, I think we do, Your Honor, because the fairest reading of that ruling, given the context of the suppression hearing, is that the Superior Court considered both objective and subjective evidence for the reasons that Judge Christin pointed out, which is that the evidence elicited at the suppression hearing included a lot of objective evidence going to... I think all it means is that every judge knows that every time he or she rules, they should say totality of the circumstances, right? That might be the case, Your Honor. Counsel, what should we make of the... There are some objections that are very peculiar where the judge didn't allow questions to be asked on the grounds of relevance, where the questions sure look relevant to me. What should we make of that? The specific question and objection, I think, that my opposing counsel mentioned was on ER 305, and the question was, were you aware that by saying he's free to leave, you would not have to give Miranda rights? And I think the objection there was actually correct in the sense that the key inquiry is not what Cordova intended by saying he was free to leave, but the deliberateness of failing to give the Miranda warning once the interrogation became... That's true, but the effort was to demonstrate that he was hyper-aware of the Miranda issues throughout this interrogation. And to essentially impeach his notion that it was a mistake on the basis that he was so hyper-aware of the connections. That's true, Your Honor, but even if that objection might have been incorrect, later in that transcript, actually just the next page, the question does get answered, or that evidence does come in. The Superior Court permitted counsel to ask whether... What it did to the record is what it demonstrates about the judge's frame of mind as to what he thought was pertinent and what he didn't think was pertinent. Yes, Your Honor. I mean, one way to look at it is by saying, is the way that opposing counsel wants to frame it. But I think on habeas review, we have to look at this sort of by presuming that the trial court was doing the right thing, following the law. And here, again, if you look at the record, even just right after that, in sustaining that objection, the court said, it's just a sequence of events that's relevant, which, again, indicates... But wait a minute. No, it goes on, but you have to read the next sentence. That's not what happens. On page 306, he says, Your Honor, the defense counsel says, Your Honor, no, you're not going to be heard, thanks. Defense counsel, again, says, just for the record, I want to state that part of the argument is it's intentional. The judge says, I understand that, I understand that, but that's not the point. Well, it's absolutely the point. Well, again, it depends on what he meant by intentional. And I think that it's not intentional as to his reason for asking whether he's free to leave, but the court clearly did understand that the question was the cyber inquiry about whether it was intentional to initially fail to barandize and then subsequently get a confession. And then if you look further down on that same page, 306, the evidence does come out that's telling him free to leave. He's not in custody. Was that intentional? Did you intentionally not read him as Miranda rights? And evidence was then elicited about that issue. So again, that evidence was before the Superior Court. And if you look at page 305, when the court was actually saying  which again, if we're looking at this with all the presumptions that this court must under Ed Pahabia's review, that is evidence that the court was looking at the sequence of events, the objective evidence going to what Detective Cordova was intending to do with this interrogation. We have in the record Cordova's experience as a police officer, that evidence was elicited. We have the actual questioning of what happened. Can we just back up for a minute? I mean, it strikes me. I think what your race definitely holds that the Kennedy opinion and Siebert is the controlling one. What it sets up by doing that and what that opinion sets up is exactly what's happening here, which is a whole set of inquiries into what the police thought when they were doing something, which has no impact at all on the person in custody. In other words, from his point of view as to whether his ultimate and that's particularly clear here because the second interrogation was nothing but a rehash of the first. So as to whether he was actually adequately warned or whether he would have given this second interrogation absent the first, it has nothing to do with it. I guess aside from a rant, my only question is, is it clear that by deliberateness, what Justice Kennedy meant by deliberateness? I mean, this was deliberate in the sense that the officer might not have remembered that he didn't do this, but he actually, he didn't do it. It was willful in the sense that it's not like he was under some problem why he didn't do it. He just didn't do it. He made a mistake. So the question is, is a mistake. I mean, the example in some of the other cases were things like, oh, there was a big hurry or there wasn't time or he didn't think he was in custody. Here, he absolutely knew he was in custody. So the question is, is not doing this, is it clear that the Kennedy test applies to a situation like this where there's just no doubt the guy was in custody and that the officer knew he was in custody and the officer knew that he was supposed to give him the Miranda orders and that he didn't give him the Miranda orders? Yes, Your Honor. Why isn't that deliberate? It is clear that the Kennedy test does apply to situations like this. Why? If you look at Seibert itself, the second to last paragraph of Kennedy's incurrence, he says specifically that his test would apply where the two-step interrogation technique was, quote, used in a calculated way to undermine the Miranda warning. So I think that goes to what Your Honor was pointing out, which is, yes, which is the deliberateness has to be deliberately meant to undermine the warning, not just sort of a willful yet inadvertent mistake as to whether we should have given the warning. He was acting tactically or strategically, that is the officer was, in that he brought him in, did this non-custodial supposed interrogation until at some point he told him he was in custody. He was certainly operating in a way to undermine the warnings, but up to some point he purposely didn't give him the warnings. When he first brought him in, he didn't give him the warnings. But they weren't legally required because he wasn't in custody. And so the question is, was the two steps, looking at the two interviews collectively, was this the type of two-stage interrogation barred by Seibert? And well, actually, I mean, the question here in this court is whether the factual finding process of the state courts was accurate, whether they considered the relevant evidence. And again, looking at not only the court's statement that it considered the totality of the circumstances, but also the evidence elicited at the suppression hearing, the arguments that the counsel made at the suppression hearing before the court ruled. The fairest reading of the suppression hearing is that the trial court, the Superior Court, did consider both objective and subjective evidence, and therefore the fact-finding process was correct. Do you want to address prejudice? Sure, Your Honor. I think, as you pointed out, the question is under Brecht. And because the court of appeal here made a harmlessness determination, we have to, in order to determine, in order to overrule the district court here, the court has to find that that harmless determination itself was unreasonable. No, no, we don't. Well, I think Ayala sort of... Well, I don't know. I mean, it's just the same thing. Let's just do it once, not twice. Right, okay, so, I mean, the argument there would be that it's a logical conclusion to find that the testimony of the victims here, and looking at the closing arguments in the second case, there was a lot of emphasis on the credibility of those witnesses. And that... And given the sort of persuasiveness and directness of the witnesses' testimony as compared to the sort of ambivalent, equivocal admissions that were made in the statements, it's entirely a reasonable conclusion to say that the statements didn't influence or were harmless beyond a reasonable doubt. Thank you. Okay, thank you. Rebuttal? Let me take... make two points in reverse order. First, with respect to prejudice, yeah, they could have believed the victim, but the prosecutor... Take her at her word. She emphasized over and over again that there may be inconsistencies, but they're all corroborated by Mr. Glass. It... It was prejudicial. Second, with respect to Judge Bersan's question, you know, I'll agree with you, and Rodriguez-Preciado, I think there's a way of reading Siebert that the seven... who did not think that... I already wrote that opinion, but it didn't work. LAUGHTER Reyes just tells us what to do. And... Not Reyes, the other one. The... what the state just said is exactly true. This is right in the heartland of the two-step interrogation barred by Siebert. And just to say, because one trial judge believes one detective's statement that... And it's a lie by all the rest of the record. Here, when he says, you're in custody... I mean, this is not a case where the man got into custody and he just did slip his mind that, you know, everything's going on. I knew he was in custody, but I forgot to... Well, in a way, the fact that he said you're in custody... He said, I'm in... You're in custody. I know, and in a way, that kind of supports the notion that he forgot it, because there was no reason even to be saying that if it wasn't the predicate for giving Miranda warnings, and then he just forgot the warnings, because otherwise he could have just gone along as he was without declaring he was in custody. But what utility did that have to the officer other than as a trigger to give Miranda warnings? No, it should have triggered Miranda... What the utility was, if you look at the context, he's in that interview room, he's getting kind of frustrated with the defendant because he's not getting them the answers he wants. So he uses what I think was just a ruse of this polygraph, but whatever. And if you watch the video, he lets them sit there for 35 minutes, sort of stewing. He comes back, he immediately says, you're in custody now, that ups the coercion, and I think it's pretty clear from context that the investigator's object was now, OK, this is like a break, and now we're going to up the stakes, and he's going to talk, I'm going to tell him he's in custody, that's going to put more pressure on him. That's why he told me he was in custody. And it just belies credibility that any police officer, any criminal lawyer, any judge who deals with criminal cases, as soon as you say custody in an interrogation context, that means Miranda. He knew that. OK. All right, thank you, Mr. Tanaka. Matter is submitted.
judges: Paez, Berzon, Christen